[No. 37372. Department One. April 30, 1964.]

LESLIE KIME, *Petitioner*, v. JACK D. NIEMANN *et al.*, *Respondents*.*

*Wolfstone Piehler* and *J. Murray Kleist*, for petitioner.

*Bryan & Bryan*, for respondents.

PER CURIAM.—Certiorari was granted to review an interlocutory pretrial order of somewhat unusual character entered by the Superior Court of Kitsap County.

The petitioner had commenced an action for injuries sustained when the car in which he was riding was hit from the rear by a state highway truck. The state of Washington, and the driver of the truck and his wife were named as defendants.

The attorneys for the defendants (respondents here) sought and obtained, over the objection of the petitioner, the following order (denominated ORDER RE DOCTOR-PATIENT PRIVILEGE):

"THIS MATTER having come on regularly for hearing on defendants' Motion for an Order as to Doctor-Patient Privilege and medical records, and the Court having heard the

*Reported in 391 P. (2d) 955.

statements of counsel and being fully advised in the premises, it is now, therefore,

"ORDERED that the filing of the complaint in this action by and on behalf of the plaintiff, Leslie Kime, constituted a waiver of the doctor-patient privilege by the said Leslie Kime, the patient, as to the various physicians who have treated him, examined him and consulted with him on account of the injuries alleged to have been received in this action, and also constituted a waiver as to any services he may have received from or records being kept by any hospital, doctor, or other clinic or institution, with respect to said injuries and his general physical condition. It is further

"ORDERED that said privilege has also been waived as to the general physical, mental and emotional condition of Leslie Kime as such conditions could have any bearing on the injuries complained of in this action. It is further

"ORDERED that defendants' counsel of record, Robert J. Bryan and James W. Bryan, Jr., practicing law as Bryan and Bryan, have a right under the law to contact and question said doctors and institutions, and to view records and x-rays regarding the aforementioned condition of Leslie Kime at their own expense. It is further

"ORDERED that said privilege has been waived specifically as it relates to John Almond, M.D., Harrison Memorial Hospital, and any other physician who has examined Leslie Kime since 29 March 1963. It is further

"ORDERED that Canon 39 of Professional Ethics provides that a lawyer may properly interview any witness or prospective witness for the opposing parties in any civil or criminal action without the consent of opposing counsel or parties, and that Bryan and Bryan do not need the consent of Leslie Kime, or his attorneys, in order to be entitled to interview the physicians and institutions referred to herein, or to receive information from them. . . ."

█ It will be noted that if the words "ORDERED that" were omitted from each paragraph, we would have simply a statement of fact or law. It actually directs or orders nothing.

If we assume the accuracy of the statements of law and fact, the words "ORDERED that" seem to be superfluous. It is really not an order to do anything, but an effort to advise doctors and hospitals of their rights, if they so desire, to discuss their patients' injuries and "general physical condi-

tion" with lawyers whose clients have interests adverse to their patients, and of the concomitant right of these lawyers to discuss these matters with them. The "if they so desire" portion of the advice seems to have been almost overlooked and quite overshadowed by the peremptory word "ORDERED."

. We have not heretofore been advised of the need for an easier, less formal, and more economical means for securing information from doctors and hospitals concerning the injuries and "general physical condition" of plaintiffs in personal injury actions. If our discovery and pretrial procedures need revising or liberalizing to give counsel greater latitude, we are willing to consider any suggestions the bar, or the trial courts may have. However, we disapprove of the specific "ORDER" brought before us for review, and direct that it be set aside for the reasons heretofore indicated.

We have, thus far, assumed the accuracy of the statements of law and fact, in the so-called "Order," to demonstrate that even if such statements are accurate, an "Order" should not have been entered. If, however, advisory opinions as to the status of the doctor-patient privilege are to be issued by the superior courts instead of "Orders" (which opinions would not be subject to review), we should make it clear that there is some doubt as to the accuracy of the law as stated. If it is correctly stated, it is, like some instructions, badly slanted. The interpretation which the respondents and the trial court have placed on our opinion in *Randa v. Bear* (1957), 50 Wn. (2d) 415, 312 P. (2d) 640, is the basis for the statement that the filing of the complaint constituted a waiver of the doctor-patient privilege by the petitioner. This statement goes beyond the actual holding in that case and renders Rule of Pleading, Practice and Procedure 35 (b) (2) unnecessary.

In *Randa v. Bear, supra,* we pointed out that the majority rule has been that the bringing of an action, in which an essential issue is the existence of a physical ailment, does not constitute a waiver. We then said:

" . . . In recent years, this rule has been modified in several states by statutes providing that *the bringing of an*

*action for personal injuries* constitutes a waiver of the privilege as to those injuries. See Annotation, 25 A.L.R. (2d) 1429." (p. 423)

No such statutes have been enacted in this state.

We were concerned, in *Randa v. Bear, supra,* with an action by the assignee of a hospital against Ann Bear for services rendered. She joined the Grays Harbor Medical Service Bureau as a cross-defendant; and, conceding that she owed the hospital bill, contended that it should be paid by the Medical Service Bureau under its contract with her. Its defense was that the treatment for which the hospital bill was incurred, fell within the exclusionary provisions of her contract with the Medical Bureau, *i.e.,* it was for an ailment from which she suffered prior to the date of the contract. What we held was that evidence relative to the pre-existing ailment should have been admitted at the trial because, by seeking to enforce her contract, she waived her claim of privilege. It is true that in our opinion we said:

" . . . by bringing a suit upon the medical service contract to which she was a party, and thus placing in issue her physical condition and the ailment for which she was treated, waived the privilege afforded her by the statute." (p. 424)

This, however, was said with reference to the admissibility of testimony and evidence offered at the trial, which we held to be improperly excluded in reliance on the claim of privilege.

As indicated, we have had no statutory modification of the privilege. We have never held that there has been a waiver of a claim of privilege, except when the issue has been raised by the exercise of such a claim with all the circumstances before the court. Whether a blanket ruling should be made that the filing of a complaint for personal injuries (and before any effort is made to prosecute the action) constitutes a waiver of the doctor-patient privilege—not only with respect to the plaintiff's claimed injuries, but as to his general physical condition—is yet to be determined. Suppose the plaintiff, as very frequently happens, dismisses the action?

We will not, on this record, pass on the question of when and under what circumstances a patient will be deemed to have waived his privilege; but we do, for the reasons stated earlier in this opinion, direct that the "Order" now before us for review be set aside.