EUGENE R. LOCKETT, *Appellant,* v. FRED GOODILL *et al.,*
*Respondents.**

*Wright, Wendells, Froelich & Power, Alan L. Froelich,*
and *Duane S. Radliff,* for appellant.

*Williams, Lanza, Kastner & Gibbs,* by *Henry E. Kastner,*
for respondents.

PER CURIAM.—The trial court sustained a challenge to
the sufficiency of plaintiff's evidence as a matter of law. He
appeals from a judgment dismissing his action.

April 14, 1964, plaintiff commenced this action for dam-
ages against Dr. G. H. Lawrence who, on April 19, 1961,
operated upon him for appendicitis; Dr. Fred Goodill, the
anesthesiologist; the Mason Clinic, a copartnership; and the

*Reported in 430 P.2d 589.

Virginia Mason Hospital, a corporation, where the operation was performed.

Although the appendectomy was apparently successful, plaintiff was paralyzed in both lower extremities after the operation. An epidural block had been administered. Plaintiff was in the hospital from April 19 until June 13, 1961. During this period, Dr. John Sutton Tytus, a neurologist and neurosurgeon practicing at the Mason Clinic, was called as a consultant. Plaintiff was given muscle tests and an electromyogram at the University Hospital, and a number of physical therapy treatments before his discharge from the hospital. He made three outpatient calls to the hospital after his discharge, the last on August 28, 1961.

When discharged from the hospital, plaintiff was able to use a walker, later crutches, then canes, until, at the time of trial January 5, 1966, he could walk on the level without the canes for about a block; however, he had no reflex reaction to catch himself in the event he stumbled. He has not been able to return to his job as a truck driver.

The defendants appeared, denied negligence, and pleaded a written release in full, signed by plaintiff and dated November 17, 1961, as an affirmative defense. The release recites payment to plaintiff of $5,616.

October 30, 1964, the trial court entered an order granting separate trials as to the issue concerning the validity and effect of the release involved herein and as to the issue of liability and damages on the merits.

The order further provided that if the release was set aside, 2 months were to intervene between the dates of the two trials.

The court having sustained a challenge to the sufficiency of plaintiff's evidence upon the first of the two possible trials, the issue before us on this appeal is a narrow one.

The release pleaded by defendants as an affirmative defense came into existence as follows: In October, 1961, plaintiff telephoned the hospital and asked to talk with one of its "insurance agents." The insurance adjuster met with plaintiff three times over a period of four or five weeks.

The adjuster made no representations to plaintiff, who signed the release and received payment of an amount identified as plaintiff's average weekly wage of $108 per week for a year—a formula of settlement suggested by plaintiff. The adjuster told defendants that plaintiff believed he would only be denied use of his legs for a year. There is competent medical testimony which, if believed, supports the conclusion that defendants knew, or should have known from plaintiff's medical history and the tests made upon him, that an accurate prognosis that plaintiff would return to work within a year could not be made. The settlement was made after the insurance adjuster had consulted with Dr. Lawrence and a committee of defendant hospital.

We are governed by the oft-repeated rule that a challenge to the sufficiency of plaintiff's evidence admits its truth and all inferences that can reasonably be drawn therefrom. It requires that the evidence be interpreted most strongly against defendant and in a light most favorable to plaintiff. No element of discretion is involved. *Davis v. Early Constr. Co.*, 63 Wn.2d 252, 386 P.2d 958 (1963), and authorities cited.

Reading the record in the favorable light required reveals that plaintiff testified that Dr. Lawrence did not tell him what was wrong with him; that plaintiff asked Dr. Lawrence about his condition "about every time he came in" but could never get an answer; that no doctor told plaintiff that he was suffering from nerve damage; that the results of the electromyogram and of the muscle test were neither shown nor explained to him; that Dr. Tytus did not explain or interpret neurological findings made by him; he was never told the results of the physical therapy. The posture of this case requires that we take these facts to be true.

The relationship of patient and physician is a fiduciary one of the highest degree. It involves every element of trust, confidence and good faith.

■ Plaintiff's evidence, if believed, is sufficient to support the conclusion that defendants breached this trust when they did not inform him that they were unable to predict that he would recover within a year. In the circumstances of the instant case, defendants owed plaintiff the duty to inform him that his settlement premise was false and uninformed.

*Beaver v. Estate of Harris,* 67 Wn.2d 621, 409 P.2d 143 (1965), upon which defendants rely, is not apposite. In *Beaver* the plaintiff presented his case upon the theory of mutual mistake when the release was signed. The instant case is bottomed upon fraud and breach of a fiduciary duty.

The judgment of dismissal is reversed and the cause is remanded for a new trial. Costs will abide final determination.

It is so ordered.

[No. 38817.   Department One.   July 20, 1967.]