[No. 54148–5.   En Banc.   June 9, 1988.]

ROBERT LOUDON, *Individually and as Personal Representative, Respondent,* v. JAMES MHYRE, ET AL, *Petitioners.*

*Lane, Powell, Moss & Miller,* by *Reed P. Schifferman* and *Richelle Gerow Bassetti,* for petitioners Mhyre.

*Williams, Kastner & Gibbs,* by *Mary H. Spillane,* for petitioners Kenny.

*Kargianis, Austin & Erickson,* by *Bruce A. Wolf,* for respondent.

*Patricia H. Wagner* and *Nancy E. Elliott* on behalf of Washington Defense Trial Lawyers, amici curiae for petitioners.

*Bryan P. Harnetiaux* and *Robert H. Whaley* on behalf of Washington Trial Lawyers Association, amici curiae for respondent.

CALLOW, J.—The issue presented is whether defense counsel in a personal injury action may communicate ex parte with the plaintiff's treating physicians when the

plaintiff has waived the physician–patient privilege. We hold that defense counsel may not engage in ex parte contact, but is limited to the formal discovery methods provided by court rule.

This is a wrongful death action brought by Robert Loudon, individually and as personal representative of the estate of his son, David Loudon, involving malpractice claims against Drs. James Mhyre and Gerald Kenny. Drs. Mhyre and Kenny treated David for liver and kidney damage received in an automobile accident in Washington on December 14, 1985. Believing David's condition to be improving, the doctors released him from the hospital the following week. Upon return to his home in Oregon, however, David suffered complications and died on January 21, 1986.

Prior to his death, David received treatment from two Oregon health care providers. Loudon voluntarily provided Mhyre and Kenny with the medical records from those institutions. Defense counsel then moved for an order declaring that the physician–patient privilege had been waived and authorizing ex parte communication with David's treating physicians in Oregon.

Relying on *Kime v. Niemann,* 64 Wn.2d 394, 391 P.2d 955 (1964), the trial court ruled that the privilege had been waived but that ex parte contact was prohibited. The court ordered that discovery could be had only through the procedures provided in the court rules. The defendants appealed. We granted discretionary review and we affirm the order of the trial court.

In *Kime,* this court set aside a pretrial order allowing ex parte contact, stating:

> We have not heretofore been advised of the need for an easier, less formal, and more economical means for securing information from doctors and hospitals concerning the injuries and "general physical condition" of plaintiffs in personal injury actions. If our discovery and pretrial procedures need revising or liberalizing to give counsel greater latitude, we are willing to consider any suggestions the bar, or the trial courts may have.

*Kime,* at 396.

The defendants now urge that there is a need for informal, ex parte interviews of treating physicians. They contend that depositions are more costly and less efficient; that requiring defendants, but not plaintiffs, to use formal discovery is unfair; and that requiring defendants to depose treating physicians gives plaintiffs a tactical advantage by enabling them to monitor the defendants' case preparation.

■ The jurisdictions which have addressed this issue are divided as to the appropriate answer. A number of courts have approved ex parte contact due to its advantages over depositions and the claimed unfair advantage given plaintiffs. *See Doe v. Eli Lilly & Co.,* 99 F.R.D. 126 (D.D.C. 1983); *Trans–World Inv. v. Drobny,* 554 P.2d 1148 (Alaska 1976); *Langdon v. Champion,* 745 P.2d 1371 (Alaska 1987); *Green v. Bloodsworth,* 501 A.2d 1257 (Del. Super. Ct. 1985); *State ex rel. Stufflebam v. Appelquist,* 694 S.W.2d 882 (Mo. Ct. App. 1985); *Stempler v. Speidell,* 100 N.J. 368, 495 A.2d 857 (1985). We decline to adopt the rule of these cases. We find that the burden placed on defendants by having to use formal discovery is outweighed by the problems inherent in ex parte contact. *See Alston v. Greater Southeast Comm'ty Hosp.,* 107 F.R.D. 35 (D.D.C. 1985); *Petrillo v. Syntex Labs, Inc.,* 148 Ill. App. 3d 581, 499 N.E.2d 952 (1986), *appeal denied,* 113 Ill. 2d 584, 505 N.E.2d 361, *cert. denied sub nom. Tobin v. Petrillo,* 107 S. Ct. 3232 (1987); *Roosevelt Hotel Ltd. Partnership v. Sweeney,* 394 N.W.2d 353 (Iowa 1986); *Wenninger v. Muesing,* 307 Minn. 405, 240 N.W.2d 333 (1976); *Smith v. Ashby,* 106 N.M. 358, 743 P.2d 114 (1987); *Nelson v. Lewis,* 534 A.2d 720 (N.H. 1987); *Anker v. Brodnitz,* 98 Misc. 2d 148, 413 N.Y.S.2d 582 (Sup. Ct.), *aff'd mem.,* 73 A.D.2d 589, 422 N.Y.S.2d 887 (1979).

We hold that ex parte interviews should be prohibited as a matter of public policy. The physician–patient privilege prohibits a physician from being compelled to testify, without the patient's consent, regarding information revealed

and acquired for the purpose of treatment. RCW 5.60-.060(4).[1] A patient may waive this privilege by putting his or her physical condition in issue. *See Randa v. Bear,* 50 Wn.2d 415, 312 P.2d 640 (1957); *Phipps v. Sasser,* 74 Wn.2d 439, 445 P.2d 624 (1968).[2] Waiver is not absolute, however, but is limited to medical information relevant to the litigation. *See* CR 26(b)(1).

The danger of an ex parte interview is that it may result in disclosure of irrelevant, privileged medical information. The harm from disclosure of this confidential information cannot, as defendants argue, be fully remedied by subsequent court sanctions. The plaintiff's interest in avoiding such disclosure can best be protected by allowing plaintiff's counsel an opportunity to participate in physician interviews and raise appropriate objections. We find the reasoning of the Iowa Supreme Court persuasive:

> We do not mean to question the integrity of doctors and lawyers or to suggest that we must control discovery in order to assure their ethical conduct. We are concerned, however, with the difficulty of determining whether a particular piece of information is relevant to the claim being litigated. Placing the burden of determining relevancy on an attorney, who does not know the nature of the confidential disclosure about to be elicited, is risky. Asking the physician, untrained in the law, to assume this burden is a greater gamble and is unfair to the physician. We believe this determination is better made in a setting in which counsel for each party is present and the court is available to settle disputes.

---

[1]RCW 5.60.060(4) provides in part:

"Subject to the limitations under RCW 71.05.250, a physician or surgeon or osteopathic physician or surgeon shall not, without the consent of his or her patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him or her to prescribe or act for the patient . . ."

[2]Under two recent amendments to the privilege, waiver is now required (*see* Laws of 1986, ch. 305, § 101, p. 1355) or is deemed to have occurred (*see* Laws of 1987, ch. 212, § 1501, p. 797) within 90 days of filing a personal injury or wrongful death action. These amendments do not apply here as Loudon filed this action before August 1, 1986. *See* Laws of 1986, ch. 305, § 910, p. 1367.

*Roosevelt Hotel Ltd. Partnership v. Sweeney,* 394 N.W.2d at 357.

The defendants urge us to permit ex parte contact but allow plaintiff the opportunity to seek a protective order under CR 26(c) limiting or prohibiting such contact upon a showing of good cause. However, we foresee that a protective order would usually be sought by plaintiff's counsel which would involve the court system in supervision of every such situation. We reject such a procedure.

The mere threat that a physician might engage in private interviews with defense counsel would, for some, have a chilling effect on the physician–patient relationship and hinder further treatment. The relationship between physician and patient is "a fiduciary one of the highest degree . . . involv[ing] every element of trust, confidence and good faith." *Lockett v. Goodill,* 71 Wn.2d 654, 656, 430 P.2d 589 (1967). This close confidential relationship is recognized by the Hippocratic Oath and in the ethical guidelines of the American Medical Association.[3] "[W]e find it difficult to believe that a physician can engage in an *ex parte* conference with the legal adversary of his patient without endangering the trust and faith invested in him by his patient." *Petrillo v. Syntex Labs., Inc.,* 148 Ill. App. 3d at 595. The presence of plaintiff's counsel as the protector of a

---

[3]Principle IV of the AMA Principles of Medical Ethics states:

> A physician shall respect the rights of patients . . . and shall safeguard patient confidences within the constraints of the law.

Section 5.05 of the AMA Current Opinions of the Council on Ethical and Judicial Affairs (1986) further provides:

> The information disclosed to a physician during the course of the relationship between physician and patient is confidential to the greatest possible degree. The patient should feel free to make a full disclosure of information to the physician in order that the physician may most effectively provide needed services. The patient should be able to make this disclosure with the knowledge that the physician will respect the confidential nature of the communication. The physician should not reveal confidential communications or information without the express consent of the patient, unless required to do so by law.

*See also* Washington State Medical Association Judicial Council Opinion 5.06 (1985) (identical).

patient's confidences will allay the fear that irrelevant confidential material will be disclosed and preserve the fiduciary trust relationship between physician and patient. *Wenninger v. Muesing,* 307 Minn. at 411.

In addition, a physician has an interest in avoiding inadvertent wrongful disclosures during ex parte interviews. We recognize, without deciding, that a cause of action may lie against a physician for unauthorized disclosure of privileged information. *See Smith v. Driscoll,* 94 Wash. 441, 442, 162 P. 572 (1917) (dictum); Ward, *Pre–Trial Waiver of the Physician/Patient Privilege,* 22 Gonz. L. Rev. 59, 62–63 (1986–1987); Annot., *Physician's Tort Liability, Apart from Defamation, for Unauthorized Disclosure of Confidential Information About Patient,* 20 A.L.R.3d 1109 (1968). The participation of plaintiff's counsel to prevent improper questioning or inadvertent disclosures enhances the accomplishment of the purpose of the physician–patient privilege by also providing protection to the physician.

We note also that permitting ex parte interviews could result in disputes at trial should a doctor's testimony differ from the informal statements given to defense counsel, and may require defense counsel to testify as an impeachment witness.

We are unconvinced that any hardship caused the defendants by having to use formal discovery procedures outweighs the potential risks involved with ex parte interviews. Defendants may still reach the plaintiff's relevant medical records, and the cost and scheduling problems attendant with oral depositions can be minimized (though perhaps not as satisfactorily) by using depositions upon written questions pursuant to CR 31. Moreover, plaintiff's counsel may agree to an informal interview with both counsel present. Furthermore, the argument that depositions unfairly allow plaintiffs to determine defendants' trial strategy does not comport with a purpose behind the discovery rules—to prevent surprise at trial.

Finally, the defendants argue that prohibiting ex parte contact with physicians is inconsistent with *Wright v. Group Health Hosp.*, 103 Wn.2d 192, 691 P.2d 564 (1984) and with the Washington State Bar Association Formal Ethics Opinion 180 (1985).[4] *Wright* held (1) that the attorney–client privilege would not, of itself, bar an opposing attorney from interviewing employees of a corporation so long as the inquiries concerned factual matters and not communications between the employee and the corporation's attorney; (2) current employees authorized to speak for a corporation would be considered "parties" with whom opposing counsel could not speak ex parte; and (3) opposing counsel could interview employees of the corporation ex parte so long as such employees were not authorized to speak for the corporation or in a management status.[5] *Wright v. Group Health Hosp., supra,* was not concerned with the fiduciary confidential relationship which exists between a physician and patient. The unique nature of the physician–patient relationship and the dangers which ex parte interviews pose justify the direct involvement of counsel in any contact between defense counsel and a plaintiff's physician. Similarly, Ethics Opinion 180 states only that ex parte contact with physicians is not unethical, but it does not address the policy concerns which militate against such contact.

---

[4]Washington State Bar Association Formal Ethics Opinion 180 reads:
"Where no patient privilege exists or where the privilege has been declared waived by Court Order or by the express written consent of the patient, a lawyer may interview a physician in the same manner as any other witness."

[5]The ex parte communications rule of CPR DR 7–104 was replaced after the filing of the opinion in *Wright v. Group Health Hosp.* Its replacement, RPC 4.2, presently reads:
    In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

We hold that defense counsel may not engage in ex parte contacts with a plaintiff's physicians. The trial court's order is affirmed.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, GOODLOE, and DURHAM, JJ., concur.