[Nos. 57825-7, 57943-1, 57942-3.  En Banc.  January 23, 1992.]

CHARLES HOLBROOK, *Appellant*, v. WEYERHAEUSER COMPANY, ET AL, *Respondents*.

WARREN VANKEIRSBILCK, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.

GLORIA TWOMBLEY, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.

*George M. Riecan* and *George M. Riecan & Associates, Inc., P.S.,* for appellant Holbrook.

*Kenneth O. Eikenberry, Attorney General,* and *Nancy Thygesen Day* and *Thomas R. Chapman, Assistants,* for appellant State.

*Kathryn D. Fewell,* for respondent Weyerhaeuser Co.

*Thomas A. Thompson, Daniel P. Thompson,* and *Walthew, Warner, Costello, Thompson & Eagan,* for respondents Vankeirsbilck and Twombley.

*Bryan P. Harnetiaux* and *Gary N. Bloom* on behalf of Washington State Trial Lawyers Association, amicus curiae.

*Wayne L. Williams* on behalf of Washington Self-Insurers' Association and Association of Washington Business, amici curiae for respondent Weyerhaeuser Co.

DURHAM, J. — In *Loudon v. Mhyre*, 110 Wn.2d 675, 756 P.2d 138 (1988), this court prohibited ex parte contact between defendant's attorney and plaintiff's treating physi-

cian in a personal injury action. This case asks if that rule should be extended to proceedings before the Board of Industrial Insurance Appeals (the Board). We hold that it should not.

The three claimants in these consolidated appeals sustained industrial injuries, received medical treatment, and had their claims closed by the Department of Labor and Industries (the Department). Each appealed to the Board, alleging total and permanent disability. The Board denied the claimants' petitions for review and adopted the Department's orders as final.

On appeal to superior court, claimants relied on *Loudon* to move for the exclusion of testimony of the treating physicians who appeared at the Department hearing. Prior to offering the testimony, defense counsel had brief ex parte contacts with the physicians to prepare for their testimony. Holbrook's motion was denied, the Department's order was affirmed in full, and Holbrook appealed. The motions of Twombley and Vankeirsbilck were granted, and the cases were remanded to the Board for determination on the remainder of the evidence. The Department appealed. The three appeals were then transferred to this court and consolidated.

In *Loudon v. Mhyre, supra,* this court addressed the scope of a waiver of the physician-patient privilege in a personal injury action.[1] The issue as framed by the court was if

---

[1]Because the physician-patient privilege was not known at common law, it is limited in its scope by the statutes which create it. *Phipps v. Sasser,* 74 Wn.2d 439, 445 P.2d 624 (1968). The privilege is codified at RCW 5.60.060(4):

"Subject to the limitations . . ., a physician or surgeon or osteopathic physician or surgeon shall not, without the consent of his or her patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him or her to prescribe or act for the patient, except as follows:

". . . .

"(b) Ninety days after filing an action for personal injuries or wrongful death, the claimant shall be deemed to waive the physician-patient privilege. Waiver of the physician-patient privilege for any one physician or condition constitutes a waiver of the privilege as to all physicians or conditions, subject to such limitations as a court may impose pursuant to court rules."

"defense counsel in a personal injury action may communicate ex parte with the plaintiff's treating physicians when the plaintiff has waived the physician-patient privilege." *Loudon*, at 675-76. We held that ex parte contact was not permitted and defense counsel was limited to the formal discovery methods provided by court rule. *Loudon*, at 676.

In *Loudon*, a father brought a wrongful death action involving medical malpractice claims against Washington doctors. The doctors had treated Loudon's son for injuries and released him. The boy returned home to Oregon, where he later died from complications. The father voluntarily sent records from the Oregon doctors to the Washington doctors. Defense counsel moved for an order declaring the physician-patient privilege waived and authorizing ex parte contact with the treating physicians in Oregon. The trial court relied on *Kime v. Niemann*, 64 Wn.2d 394, 391 P.2d 955 (1964), to rule that the privilege had been waived,[2] but that ex parte contact was prohibited and discovery could only be had through procedures in the court rules.

We affirmed, concluding that the burden placed on defendants by having to use formal discovery was outweighed by the problems inherent in ex parte contact. A number of policy concerns were enumerated in support of this holding. *Loudon*, at 677-80.

First, ex parte interviews might result in the disclosure of irrelevant, privileged medical information. The harm from disclosure of this confidential information could not be fully remedied by court sanctions. *Loudon*, at 678. Second, the mere threat that a physician might engage in a private interview with defense counsel would, for some, have a chilling effect on the physician-patient relationship and hinder further treatment. *Loudon*, at 679. Third, the physician has an interest in avoiding inadvertent wrongful disclosures during ex parte interviews. Finally, permitting ex parte interviews might result in disputes at trial if a

---

[2]At the time Loudon filed his action, RCW 5.60.060(4) did not contain the language deeming waiver to have occurred 90 days after filing of a personal injury action. *Loudon*, at 678 n.2.

doctor's testimony differed from the informal statements given to defense counsel, which then might require defense counsel to testify as an impeachment witness. *Loudon*, at 680.

In sum, this court remained unconvinced that any hardship to defendants by having to use formal procedures outweighed the potential risks of ex parte interviews. Defendants could still reach relevant medical records; cost and scheduling problems of depositions could be minimized by using depositions pursuant to CR 31; plaintiff's counsel might agree to an informal interview with both counsel present; and the purpose behind the discovery rules — to prevent surprise at trial — was maintained. *Loudon*, at 680.

■ To determine if *Loudon*'s prohibition against ex parte contacts should be extended to appeals before the Board, a review of the relevant statutes is necessary. Washington's industrial insurance law is set forth in RCW Title 51. The purpose of the act, set forth at RCW 51.04.010, is lengthy but warrants full consideration.

> The common law system governing the remedy of workers against employers for injuries received in employment is inconsistent with modern industrial conditions. In practice it proves to be economically unwise and unfair. Its administration has produced the result that little of the cost of the employer has reached the worker and that little only at large expense to the public. The remedy of the worker has been uncertain, slow and inadequate. Injuries in such works, formerly occasional, have become frequent and inevitable. The welfare of the state depends upon its industries, and even more upon the welfare of its wage worker. The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided.

RCW 51.04.050 abolishes[3] the physician-patient privilege:

> In all hearings, actions or proceedings before the department or the board of industrial insurance appeals, or before any court on appeal from the board, any physician having theretofore examined or treated the claimant may be required to testify fully regarding such examination or treatment, and shall not be exempt from so testifying by reason of the relation of physician to patient.

Former RCW 51.36.060 imposes a duty on physicians to release medical information and protects physicians from liability for wrongful disclosure:

> Physicians examining or attending injured workers under this title shall comply with rules and regulations adopted by the director, and shall make such reports as may be requested by the department or self-insurer upon the condition or treatment of any such worker, or upon any other matters concerning such workers in their care. *All medical information in the possession or control of any person and relevant to the particular injury in the opinion of the department pertaining to any worker whose injury or occupational disease is the basis of a claim under this title shall be made available at any stage of the proceedings to the employer, the claimant's representative, and the department upon request,* and no person shall incur any legal liability by reason of releasing such information.

(Italics ours.)

█ Given the legislative context, we next address the applicability of *Loudon* to RCW Title 51 claims. The Department and Weyerhaeuser contend that *Loudon* is distinguishable. We agree. *Loudon* expressly addressed ex parte contacts in the context of a personal injury action. In contrast, the Legislature has eliminated civil causes for personal injuries in the work setting, replacing such actions with the remedies provided under Title 51. Furthermore, under Title 51, the physician-patient privilege has been abolished. RCW 51.04.050. While *Loudon* dealt with the extent of a waiver of the privilege, here the privilege does not exist.

---

[3]The statute does not speak of a "waiver" of the privilege as opposed to RCW 5.60.060(4).

It is significant that *Loudon* began by quoting language from *Kime v. Niemann*, 64 Wn.2d 394, 391 P.2d 955 (1964), indicating that the court had not been advised of the need for "easier, less formal, and more economical means for securing information". *Loudon*, at 676 (quoting *Kime*, at 396). The court has been so advised in the context of industrial insurance cases. The Legislature specifically stated that, in the context of compensation for worker injuries, the law was "economically unwise and unfair" and the remedy of the worker was "uncertain, slow and inadequate." RCW 51.04.010. Thus, civil actions for personal injury were abolished and a new system was established. The Legislature has also mandated that all medical information in the possession or control of the physician relevant to the injury at issue, in the opinion of the Department, "shall be made available at any stage of the proceedings . . . upon request". RCW 51.36.060. Thus, "easier, less formal, and more economical means for securing information" were contemplated.

More importantly, the public policy considerations enumerated in *Loudon* are not implicated here. The Legislature has determined that a free flow of information is necessary for the efficient and proper resolution of industrial insurance claims. RCW 51.36.060 mandates that all medical information deemed relevant by the Department be released.[4] *Loudon*'s concern about the possible disclosure of irrelevant, privileged information has less force in this context.

*Loudon* also expressed concern that ex parte contacts could "chill" the physician-patient relationship. Here, how-

---

[4] While none of the claimants challenge this provision as it relates to proceedings before the Department, they each contend that this section does not apply to appeals before the Board. However, by its express language, it applies "at any stage of the proceedings" and the plain meaning of proceedings encompasses appeals before the Board. Moreover, were we to conclude that this section does not apply to appeals before the Board, physicians would be released from liability for disclosure of information at the claims level, but not on appeal. There is no indication that the Legislature intended to protect physicians from suit at one level but not the other.

ever, the claimants acknowledge that ex parte contacts are permissible at the Department level. Indeed, Holbrook concedes that there may be some issues being adjudicated before the Department at the same time as there is a related appeal before the Board. The danger that additional contacts at the Board level would "chill" the physician-patient relationship after most, if not all, disclosures have been made in connection with the Department's handling of the claim is all but nonexistent. Nor is there a danger of actions against physicians for wrongful disclosure.[5] Under RCW 51.36.060, physicians are released from liability for wrongful disclosure.

Additionally, *Loudon* was concerned that permitting ex parte interviews might result in disputes at trial if the testimony differed, requiring defense counsel to testify as an impeachment witness. However, it was not made clear why this is a greater concern with medical witnesses than with any other witness. Moreover, unlike personal injury actions, the attending physician in an industrial insurance claim may be called as a witness for the employer or the Department. Certainly defendant's counsel should have access to their own witnesses.

In sum, in the context of industrial insurance claims, the Legislature has specifically addressed the concerns raised in *Loudon* and advised this court of the need for easier, less formal, economical procedures. Accordingly, we hold that *Loudon* does not apply in the context of industrial insurance claims.

■ Holbrook argues a second reason for excluding ex parte contact. He claims that it violates his right to privacy under the United States Constitution.[6] We disagree. In *Peninsula Counseling Ctr. v. Rahm*, 105 Wn.2d 929, 719

---

[5]In *Loudon*, we recognized, without deciding, that a cause of action may lie against a physician for unauthorized disclosure of privileged information. *Loudon*, at 680.

[6]Holbrook also contends the ex parte contacts violate his right to privacy under Const. art. 1, § 7. However, we decline to determine if our constitution offers broader protection in this area than the federal constitution because the

P.2d 926 (1986), this court addressed a constitutional challenge to disclosure of the names and diagnoses of mental health patients under the Community Health Mental Services Act. The court stated:

> [T]he United States Constitution does not guarantee a general right to privacy. *Katz v. United States*, 389 U.S. 347, 350, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). Rather, this right has been limited to a core group of privacy rights which receive constitutional protection. These privacy rights fall into two different categories. First, individuals should be allowed the autonomy to make certain fundamental decisions without government intrusion (abortion, contraception, education, etc.). Secondly, they should also be protected from disclosure of certain personal matters to the government. *Whalen v. Roe*, 429 U.S. 589, 599-600, 51 L. Ed. 2d 64, 97 S. Ct. 869 (1977).

*Peninsula*, at 933-34. In *Bedford v. Sugarman*, 112 Wn.2d 500, 509, 772 P.2d 486 (1989), this court reiterated the distinction between the two categories of interest encompassed within the right to privacy.

In the present case, the intrusion falls in the second category — the disclosure of personal matters. *Peninsula* set forth the test to be applied:

> While disclosure of intimate information to governmental agencies is permissible if it is carefully tailored to meet a valid governmental interest, the disclosure cannot be greater than is reasonably necessary.

*Peninsula*, at 935. Here, the disclosure is limited to medical information in the possession of the attending physician deemed relevant by the Department in connection with claims brought under the Industrial Insurance Act. Such disclosure is reasonably necessary to meet the stated governmental interest of providing sure and certain relief to workers injured on the job. There is no violation of Holbrook's constitutional right to privacy.

Holbrook also raises a number of additional issues challenging trial court rulings denying his motions to strike certain testimony. The admission of evidence will be

criteria set forth in *State v. Gunwall*, 106 Wn.2d 54, 61-63, 720 P.2d 808, 76 A.L.R.4th 517 (1986) have not been briefed. *Bedford v. Sugarman*, 112 Wn.2d 500, 507, 772 P.2d 486 (1989).

reversed only for an abuse of discretion. *Caruso v. Local 690, Int'l Bhd. of Teamsters*, 107 Wn.2d 524, 535, 730 P.2d 1299 (1987), *cert. denied*, 484 U.S. 815 (1987). "A trial court abuses its discretion when its exercise of discretion is manifestly unreasonable or based upon untenable grounds or reasons." *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984). None of Holbrook's challenges to the trial court's rulings merit individual discussion. Having reviewed the record, we conclude that the trial court did not abuse its discretion.

In conclusion, we hold that *Loudon v. Mhyre*, 110 Wn.2d 675, 756 P.2d 138 (1988) does not apply to appeals before the Board of Industrial Insurance Appeals. Furthermore, the ex parte contacts at issue did not violate Holbrook's constitutional right to privacy. The trial court in *Holbrook* is affirmed in all respects. The trial court's rulings striking the physicians' testimony in *Twombley* and *Vankeirsbilck* are reversed and both cases are remanded for reinstatement of the Board's final orders.

BRACHTENBACH, DOLLIVER, ANDERSEN, SMITH, and GUY, JJ., concur.

UTTER, J. (dissenting) — I would affirm the Superior Court for Snohomish County's decision directing the Board of Industrial Insurance Appeals (the Board) to strike the physicians' testimony in the case of respondents Gloria Twombley and Warren Vankeirsbilck, and reverse the Superior Court for Grays Harbor County's decision refusing to strike the testimony of appellant Holbrook's treating physicians.

To hold that the policies enumerated in *Loudon v. Mhyre*, 110 Wn.2d 675, 756 P.2d 138 (1988) do not apply to injured workers is incongruent with the policy and intent of RCW Title 51, the Industrial Insurance Act. Indeed, the purpose of RCW Title 51 was to make workers' compensation claims easier for the worker to pursue. The Legislature certainly

would not have countered this purpose by curbing the victims' privacy with their own physicians. This destruction of the physician-patient privilege in workers' compensation claims would, in fact, have a deterrent effect on injured workers wanting to pursue a claim.

The Industrial Insurance Act does not eliminate the physician-patient privilege because the policies underlying *Loudon* apply to workers' compensation cases; ex parte communications between defense counsel and the treating physician should be prohibited in workers' compensation cases as a violation of the physician-patient privilege. The *Loudon* decision prohibiting ex parte contact between defendant's attorney and plaintiff's treating physician should extend to proceedings before the Board of Industrial Insurance Appeals. Furthermore, RCW Title 51 should not be interpreted to eliminate the physician-patient privilege.

The issue presented is whether the *Loudon* decision applies to workers' compensation cases before the Board. We need not decide whether ex parte communications are allowed at the Department of Labor and Industries (Department) level, as all three claimants' disputes involve ex parte communications with their physicians which occurred at the Board level.

## I

Public policy arguments in *Loudon* dictate that RCW Title 51 should not be construed to allow ex parte communications between a worker's physician and the defendant's attorney. The *Loudon* holding is premised on the protection of the physician-patient privilege in general — not just in personal injury cases. The *Loudon* court did not announce a narrow rule in stating that, "We hold that ex parte interviews should be prohibited as a matter of public policy", *Loudon*, at 677, and that, "We hold that defense counsel may not engage in ex parte contacts with a plaintiff's physicians." *Loudon*, at 682. Rather, the court stressed the sanctity of the physician-patient relationship and the importance of protecting the privilege. The court wrote that,

"The relationship between physician and patient is 'a fiduciary one of the highest degree . . . involv[ing] every element of trust, confidence and good faith.'" *Loudon*, at 679 (quoting *Lockett v. Goodill*, 71 Wn.2d 654, 656, 430 P.2d 589 (1967)). Thus, the policies enumerated in *Loudon* should be taken into account in construing RCW Title 51's application to ex parte communications with the injured worker's physician.

The court in *Loudon* presented four policy arguments for prohibiting ex parte communications with physicians:

1. The opposing party will have access to irrelevant medical information;

2. This access will have a "chilling" effect on physician-patient relationships;

3. Disputes regarding differences between ex parte statements and statements under oath might require the defense attorney to take the stand as an impeachment witness; and

4. The fine line between relevant and irrelevant information might lead to causes of action brought against the physician for inadvertent disclosure of privileged information.

The strongest policy argument against allowing these communications is the first one listed — that such ex parte communications will result in disclosure of extraneous medical information. With the holding in *Loudon*, however, this worry is eliminated. The presence of plaintiff's attorney eliminates the fear that the physician might inadvertently disclose irrelevant information.

It is argued that unlimited access to medical information about the injured worker will result in the defense attorney and the *employer* acquiring confidential information. For example, in order to ensure a correct diagnosis, the patient tells his/her doctor of problems of alcoholism, or marital difficulties if these personal problems were affecting his/her health. Without the application of *Loudon*, all of this information could be passed on to the defense attorney and, in turn, the employer, thus jeopardizing the worker's job security. Allowing this deterrence to occur would undermine the

purpose of the Industrial Insurance Act. Thus, the holding in *Loudon* should apply to workers' compensation cases.

## II

RCW Title 51 does not eliminate the physician-patient privilege. It is well established, however, that the physician-patient privilege is not of common law origin, but is a creature of statutory law. *Phipps v. Sasser*, 74 Wn.2d 439, 445 P.2d 624 (1968). *See also* Shuman, *The Origins of the Physician-Patient Privilege and Professional Secret*, 39 Sw. L.J. 661 (1985) (tracing the roots of the privilege in common and civil law systems). One scholar's explanation for this is that in the 16th and 17th centuries in England, medicine was simply a trade, not a profession of high calling, and thus physicians were to be treated like all other witnesses. *Shuman*, at 673. (The author also notes that even to this day, there is no common law or statutory physician-patient privilege in England.) *Shuman*, at 674-75. Therefore, because the privilege is created only by legislation, and the Legislature limits its scope as to where it shall and shall not be applicable, such legislation is the sole basis for the privilege.

RCW Title 51 does not eliminate the privilege conveyed under RCW 5.60.060(4). RCW 5.60.060(4) grants the general physician-patient privilege. The majority argues that the workers' compensation statutes totally abolish this privilege. I disagree.

The purpose of Washington's Industrial Insurance Act (the Act) is set forth in RCW 51.04.010. It recognizes that the Act replaces all personal injury causes of actions brought by workers, establishes a "no fault" basis for recovering, and announces that the Act establishes the only "remedy, proceeding, or compensation" for injured workers. This section does *not* declare that the established rules of evidence concerning physician-patient privileges no longer apply to workers' compensation privileges.

The majority believes it is significant that *Loudon* began by quoting language in *Kime*, indicating that the court had

not been advised of the need for "easier, less formal, and more economical means for securing information". *Kime v. Niemann*, 64 Wn.2d 394, 396, 391 P.2d 955 (1964). The majority quotes RCW 51.04.010 as, in effect, advising the court of this need for easier access to information. However, the overriding concern in the passage of RCW Title 51, as section 51.04.010 demonstrates, was to improve the *remedy* of the worker, because the preexisting *remedy* was "economically unwise and unfair."[7] Furthermore, this court has held that, "the guiding principle in construing provisions of the Industrial Insurance Act is that the Act is remedial in nature and is to be liberally construed . . . with doubts resolved in favor of the worker." *Dennis v. Department of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987); *Sacred Heart Med. Ctr. v. Carrado*, 92 Wn.2d 631, 635, 600 P.2d 1015 (1979).

The majority also declares that RCW 51.04.050 "abolishes" the physician-patient privilege. Yet, this section, entitled "Testimony of physicians not privileged", only requires physicians to *testify* at hearings, actions or proceedings before the Department or the Board. Black's Law Dictionary defines testimony as "Evidence given by a competent witness *under oath or affirmation*". (Italics mine.) Thus, RCW 51.04.050 should not apply to ex parte communications.

Most significant in this case is RCW 51.36.060, which addresses the attending physician's duties, and provides:

> All medical information in the possession or control of any person and relevant to the particular injury in the opinion of the department pertaining to any worker whose injury or occupational disease is the basis of a claim under this title shall be made available at any stage of the proceedings to the employer, the claimant's representative, and the department upon request, and no person shall incur any legal liability by reason of releasing such information.

Former RCW 51.36.060.

---

[7]RCW Title 51 begins, "The common law system governing the *remedy of workers* against employers for injuries received in employment is inconsistent with modern industrial conditions. In practice *it* [*i.e.*, the remedy of *workers*] proves to be economically unwise and unfair." (Italics mine.) RCW 51.04.010.

RCW 51.36.060 does not authorize ex parte communications between defense counsel and the worker's attending physician at the Board level for several reasons.

The section's application is confined to the Department level, before the proceedings become adversarial. Indeed, RCW 51.04.050 addresses physician testimony at hearings before the Department *and* the Board, whereas this section arguably applies to proceedings only at the Department level. The Board of Industrial Insurance Appeals is not even mentioned in this section, and the Department is given the authority to determine what is relevant information that the physician must release. Once the Department's decision is appealed to the Board, however, this section does not apply.

In addition, the section provides that relevant information shall be available at "any stage of the proceedings". Again, one needs to determine what the lawmakers meant by "stage" and "proceedings". Does this mean at any time, or only during formal discovery, such as a deposition or during actual hearings?

Respondents Twombley and Vankeirsbilck also contend in their brief that the Department used the civil rules of discovery in contravention of their current interpretation of RCW 51.36.060 in *Price v. Department of Labor & Indus.*, 35 Wn. App. 139, 665 P.2d 434 (1983), *rev'd on other grounds*, 101 Wn.2d 520, 682 P.2d 307 (1984). In *Price*, the Department argued that CR 26 controls the scope of discovery in actions before the Board. *Price*, at 141. *See* RCW 51.52.140; WAC 263-12-125. The appellate court agreed and denied the claimant's motions to compel the Department to produce a copy of an investigation report containing interviews with unnamed witnesses. We reversed on different grounds.

Lastly, even if RCW 51.36.060 is interpreted to require physicians to release all relevant medical information, the Department is well equipped to obtain this information through the discovery process. The majority incorrectly con-

cludes that "*Loudon*'s concern about the possible disclosure of irrelevant, privileged information has less force in this context." Majority opinion, at 312. Furthermore, the expense of formal discovery could be minimalized by informal interviews, with both parties present. *See Loudon*, at 680.

The source of the physician-patient privilege, if it exists at all, is found in statute. RCW 5.60.060(4) acknowledges the general physician-patient privilege. The majority argues that RCW Title 51 provisions abolish all rights to this privilege for injured workers. However, RCW Title 51 does not eliminate the physician-patient privilege for two reasons. The first is the ambiguity in the sections addressing access to medical information, and the second is the underlying *purpose* of RCW Title 51 to improve the system governing injured workers' remedies and create more equality and economic feasibility in pursuing such claims.

For these reasons the Superior Court for Snohomish County's decision directing the Board to strike the physician's testimony in Twombley and Vankeirsbilck's cases should be affirmed, and the Superior Court for Grays Harbor County reversed in refusing to strike the testimony of appellant Holbrook's treating physicians.

DORE, C.J., and JOHNSON, J., concur with UTTER, J.

Reconsideration denied August 5, 1992.