IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| GREGORY ROSE and CATHERINE ROSE, and the marital community composed thereof, | ) ) ) ) | No. 30380-2-III |
| Appellants, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| FMS, INC., d/b/a OKLAHOMA FMS, INC., an Oklahoma corporation, | ) ) ) | |
| Respondent. | ) ) | |

BROWN, J. — Robert W. Mitchell, pro bono attorney for debtors Catherine and

Gregory Rose, appeals sanctions granted against him by the trial court to FMS, Inc.

d/b/a/ Oklahoma FMS, Inc. FMS is a debt collection agency collecting the Roses' five-

month unpaid account assigned for collection by Kohl's Department Store, Inc. Mr.

Mitchell sued FMS for the Roses under the Washington Collection Agency Act (CAA),

chapter 19.16 RCW and the federal Fair Debt Collection Practices Act (FDCPA), 15

U.S.C. §§ 1692 et seq. to curb FMS's harassing collection practices. The trial court

summarily dismissed the Roses' suit as unfounded after deciding the Roses were not

"in default" with Kohl's within the meaning of the FDCPA because of Kohl's internal

policy not declaring an account "in default" until after six months of non-payment. The

trial court sanctioned Mr. Mitchell $70,546.44 for FMS's attorney fees and costs under CR 11(a) (insufficient inquiry before filing suit), CR 26(g) (discovery violations), and CR 56(g) (affidavits made in bad faith). Mr. Mitchell mainly contends the trial court erred in its "in default" reasoning and he argues the underlying litigation was not baseless or frivolous. Amicus Curiae University Legal Assistance (ULA) additionally argues CR 26(g) and CR 56(g) sanctions were misplaced and would chill pro bono representation. We reverse the CR 11(a) sanctions because we conclude the underlying litigation was not baseless or frivolous. We vacate the CR 26(g) and CR 56(g) sanctions because the supporting record is vague.

## FACTS

Mrs. Rose used a credit card from Kohl's Department Store Inc. to make purchases for herself and her family on credit. Kohl's standard credit card agreement stated, "You will be in default if you fail to pay any Minimum Payment by the time and date it is due." Clerk's Papers (CP) at 566. A Kohl's risk management operations manager stated, however, "[a]s a matter of regular business practice, Kohl's does not declare card holder accounts in default until they are at least six months in arrears." CP at 990. Nothing in our record shows this regular business practice was made known to the Roses to contradict the default language of the credit card agreement.

Mrs. Rose generally made minimum monthly payments on her charges. In early 2010, the Roses were facing bankruptcy and stopped making payments. By March 2010, they had missed several minimum payments and incurred additional late fees of

$29; their account was $276 past due and their total outstanding balance was $843.17. Kohl's assigned the debt to FMS to collect on the missed payments. The next day, FMS began attempting to contact the Roses. At the time of the assignment, the debt was five months behind.

FMS sent several collection letters. FMS's call log shows 149 calls made to reach the Roses by telephone; almost all calls went unanswered. FMS contacted Mrs. Rose on March 18 at work. Her husband then called Mr. Mitchell, who was representing the Roses in another matter, and asked him to put a stop to the calls.

In June 2010, Mr. Mitchell sued FMS, asserting statutory claims under the federal FDCPA and Washington's CAA, and Consumer Protection Act (CPA), in addition to common law tort claims for emotional distress. FMS responded to Mr. Mitchell, stating that the "account was neither in default nor otherwise 'charged off,' but merely outstanding." CP at 319. FMS denied liability. Two days later, Mr. Mitchell sent a return e-mail, including 10 attachments, with discovery requests and a CR 30(b)(6) notice of deposition of FMS in Spokane.

Counsel held a CR 26(i) (discovery) conference on August 10, 2010, and then one week later, FMS responded to all of the Roses' interrogatories, requests for production, and requests for admissions, producing approximately 268 pages of responsive documents along with the audio recording of the single telephone call between an FMS representative and Mrs. Rose on March 18, 2010. Soon after, Mr. Mitchell e-mailed that he wanted another CR 26(i) conference this time, concerning

FMS's responses. Mr. Mitchell offered to dismiss the complaint for $4,900 and a promise from FMS to cease attempts to collect the past debt. FMS declined Mr. Mitchell's offer and served the Roses with interrogatories and requests for production of documents and requests for admission. FMS argued most of the Roses' answers were insufficient, deceptive, incorrectly claimed as privileged, or inconsistent.

Both parties requested summary judgment. The Roses' joint declaration in support of summary judgment, prepared by Mr. Mitchell, incorrectly stated that calls were made to Mr. Rose's cell phone and that FMS called Mrs. Rose at work after she asked them not to call that number when FMS reached her at work on March 18. Mr. Mitchell incorrectly asserted for the first time on summary judgment that FMS had left "at least 19 more voicemail messages." CP at 571.

In November 2010, the court granted FMS's motion for summary dismissal of the Roses' complaint, focusing mainly on the Roses inability to show their Kohl's account was in default when assigned to FMS for collection to trigger application of the FDCPA and CAA protections. Mr. Mitchell requested reconsideration, arguing newly discovered evidence warranted review, but Mr. Mitchell failed to serve FMS and the Roses consequently withdrew the motion.

In February 2011, FMS moved for sanctions against Mr. Mitchell. By letter opinion, the trial court granted its motion, finding Mr. Mitchell violated CR 11(a) for "filing suit without sufficient research, factual or legal, into the question of whether the account was 'in default' as that term of art applies to the various causes of action sued under";

4

violated CR 26(g) for "discovery violations . . . [for answering] the interrogatories and requests for admission and production in an offhand way, in a blatant attempt to thwart the reasonable discovery efforts of the defendant"; violated CR 56(g) for bad faith filing of affidavits "in regard to the summary judgment issues"; and "misrepresentations of fact in Mr. Mitchell's oral statements." CP at 998.

The court later entered a second letter opinion regarding the sanctions amount and a finding of reasonableness. The court then ordered Mr. Mitchell to pay $70,546.44 in attorney fees, paralegal fees, and costs to FMS. The order solely includes findings regarding reasonableness; the second letter contained no findings regarding the basis for the sanctions. Mr. Mitchell appealed.

## ANALYSIS

The issue is whether the trial court erred by abusing its discretion in sanctioning Mr. Mitchell for violating CR 11(a), CR 26(g) and CR 56(g). Mr. Mitchell contends the Roses' account was in default when he filed suit thereby precluding CR 11(a) sanctions. Amicus ULA additionally argues Mr. Mitchell's actions were not sanctionable under any of the other rules.

We review the reasonableness of an attorney fees award, including CR 11 sanctions for abuse of discretion. *Skimming v. Boxer*, 119 Wn. App. 748, 754, 82 P.3d 707 (2004). Similarly, sanctions under CR 26 and CR 56 are reviewed for abuse of discretion. *Magana v. Hyundai Motor America*, 167 Wn.2d 570, 582, 220 P.3d 191 (2009); *Just Dirt, Inc. v. Knight Excavating, Inc.*, 138 Wn. App. 409, 415, 157 P.3d 431

(2007). A court's determination will not be disturbed absent a clear abuse of discretion. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006). "A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds." *Washington State Physicians Ins. Exchange & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (citing *Holbrook v. Weyerhaeuser Co.*, 118 Wn.2d 306, 315, 822 P.2d 271 (1992)). "A discretionary decision rests on 'untenable grounds' or is based on 'untenable reasons' if the trial court relies on unsupported facts or applies the wrong legal standard; the court's decision is 'manifestly unreasonable' if 'the court, despite applying the correct legal standard' to the supported facts, adopts a view 'that no reasonable person would take.'" *Mayer*, 156 Wn.2d at 684 (internal quotation marks omitted) (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

If a trial court's findings of fact are clearly unsupported by the record, then an appellate court will find that the trial court abused its discretion. *Mayer*, 156 Wn.2d at 684. An appellate court can disturb a trial court's sanction only if it is clearly unsupported by the record. *See Ermine v. City of Spokane*, 143 Wn.2d 636, 650, 23 P.3d 492 (2001) (noting that a reasonable difference of opinion does not amount to abuse of discretion).

Attorney fees may be awarded as a CR 11 sanction. The goal of CR 11(a) is to prevent baseless filings and filings made for improper purposes. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 217, 829 P.2d 1099 (1992). If a party engages in such conduct, "the court . . . may impose . . . an appropriate sanction, which may include an order to

pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee." CR 11(a). A baseless filing is one not supported by the facts or existing law. *Bryant*, 119 Wn.2d at 217. To award sanctions for a baseless filing, the court must evaluate "'whether a reasonable attorney in like circumstances could believe his or her actions to be factually and legally justified'" and whether it is "'patently clear that a claim has absolutely no chance of success.'" *MacDonald v. Korum Ford*, 80 Wn. App. 877, 884, 912 P.2d 1052 (1996) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir.1986)). CR 11(a)(2) permits pleadings in "good faith" supporting "arguments for the extension, modification, or reversal of existing law or the establishment of new law."

The court found Mr. Mitchell did not adequately research whether the account was in default before filing suit.[1] A default finding is required solely in the FDCPA claim. The FDCPA was enacted to address the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a) and (e). Among other things, the Act prohibits practices such as "[c]ausing a telephone to ring . . . repeatedly or continuously with intent to annoy, abuse, or harass any person." 15 U.S.C. § 1692d(5). The FDCPA

---

[1] FMS contends any discussion regarding whether the Roses were in default is inappropriate because the issue is raised for the first time on appeal. *See* RAP 2.5(a). Our record, however, shows Mr. Mitchell raised the default issue in his response to

applies solely to debt collectors. 15 U.S.C. § 1692a(6)(F)(iii). A debt collector is a "person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not *in default* at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii) (emphasis added). Thus, to file suit against a debt collector under the FDCPA that debt must be in default.

Here, the credit contract states, "You will be in default if you fail to pay any Minimum Payment by the time and date it is due." CP at 566. The words in a contract are generally given their plain, ordinary meaning. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 504, 115 P.3d 262 (2005). While the Roses were not six months delinquent in their payments when Kohl's assigned their debt for collection, the record shows no evidence the Roses knew of Kohl's internal policy to wait six months before considering their account sufficiently in default to write it off. This is not something an average consumer would be aware of; neither would it negate the contract agreement. A reasonable attorney receiving a client's call that the client was being harassed by a debt collector would likely consider the client's unpaid account in default, especially considering the above quoted credit contract language.

Given this landscape, we cannot say it was "'patently clear'" that a FDCPA claim had "'absolutely no chance of success.'" *MacDonald*, 80 Wn. App. at 844 (quoting *Oliveri*, 803 F.2d at 1275). Moreover, looking at this situation from the consumer's point

---

FMS's motion for sanctions. Moreover, Mr. Mitchell argued default issues at the summary judgment hearing. Review is, thus, warranted.

of view, the consumer would likely perceive a de facto default had occurred and would not know from Kohl's unstated internal policy that a de jure default had not occurred under the FDCPA. After all, the consumer was being contacted by a debt collector specifying it was collecting a debt. In any event, nothing in this record would have prevented Mr. Mitchell from making the argument he did make at the summary judgment hearing that for all intents and purposes, the Roses were in default, and were being treated as though in default. Significantly, we cannot say Mr. Mitchell was prevented from filing suit and attempting with good faith arguments to extend, modify, or even establish new law concerning the application of the FDCPA under these circumstances as permitted by CR 11(a)(2).

Considering all, we conclude the court lacked tenable grounds to impose CR 11 sanctions. While arguably applying the correct legal standard, a matter not on review here, the court adopted an unreasonable view in sanctioning Mr. Mitchell. The court did not make findings in its second opinion letter concerning sanctions. The Roses could reasonably believe from their contract that their account was in default. While Kohl's may have internally decided to wait six months to declare their account in default, it did not inform the Roses. Nevertheless, this litigation extended well past six months after the Roses's apparent default. As noted, Mr. Mitchell had a good faith basis under CR 11(a) to believe he was justified in bringing suit to protect his clients. *See Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 220, 829 P.2d 1099 (1992) ("The court should inquire whether a reasonable attorney in like circumstances could believe his or her

actions to be factually and legally justified."). We cannot say it was patently clear the

Roses's claim had absolutely no chance of success. *MacDonald*, 80 Wn. App. at 884.

Turning to the trial court's other justifications for sanctions, CR 26(g) partly

provides every discovery request must be signed by the attorney and that the signature,

"constitutes a certification that he has read the request, response, or objection, and that

to the best of his knowledge, information, and belief formed after a reasonable inquiry it

is: (1) consistent with these rules . . . (2) not interposed for any improper purpose, such

as to harass or to cause unnecessary delay or needless increase in the cost of

litigation." CR 26(g) further provides, "If a certification is made in violation of the rule,

the court, upon motion or upon its own initiative, shall impose upon the person who

made the certification . . . an appropriate sanction."

Under CR 56(g), sanctions including reasonable attorney fees are appropriate

when it appears to the satisfaction of the court that a party submitted an affidavit in bad

faith in a summary judgment proceeding.

Mr. Mitchell challenges the lack of specific findings to support the court's

sanctions under these rules. A trial court's reasons for imposing sanctions should "be

clearly stated on the record so that meaningful review can be had on appeal." *Burnet v.

Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997).

Here, the trial court's letter opinion partly stated:

> CR 26(g) would require sanctions, since the discovery
> violations defendant has claimed plaintiff's counsel
> committed are established. Mr. Mitchell did not make the
> efforts required by the discovery rules but instead answered

10

> the interrogatories and requests for admission and production in an offhand way, in a blatant attempt to thwart the reasonable discovery efforts of the defendant. And, Mr. Mitchell promulgated burdensome and unnecessary discovery in an effort to bully the defendant into a settlement.
>
> CR 56(g) also provides a basis for sanctions with respect to the materials submitted in regard to the summary judgment issues, for the reasons stated in the defendant's motion for this basis.

CP at 998. Soon after, the court filed an order, discussing the reasonableness of the sanctions but again failed to address the basis of the sanctions. The findings to support sanctions under CR 26(g) and 56(g) are vague.

Regarding CR 26(g), the court did not explain what "offhand way" means or give specific examples of thwarting discovery effort attempts. The court does not explain what actions constituted "bully[ing]." Regarding CR 56(g), the court generally refers to FMS's brief to set forth how this rule was violated. Without more, we vacate the CR 26(g) and CR 56(g) sanctions because we cannot meaningfully review them as required in *Burnet*, and remand to allow, but do not direct, further proceedings. The trial judge has retired. A new judge will have to, if asked, review the record and assess anew whether sanctions are warranted under CR 26(g) and CR 56(g); if sanctions are warranted they would be limited to violations of CR 26(g) and CR 56(g) without consideration of the CR 11(a) sanctions rejected above.

Amicus ULA points out the potential chilling effect sanctions may have on pro bono attorneys' willingness to help low-income consumers in debt litigation. Even so, all attorneys equally must follow court rules and practice standards. Considering our

11

disposition of this appeal, reversing the sanctions and the potential for continued proceedings below, we decline to address ULA's concerns further.

Because we do not consider Mr. Mitchell's appeal frivolous and he prevails here, we do not reach FMS's request for attorney fees as a prevailing party under RAP 18.9(a) (frivolous appeal), CR 11, CR 26(g), and CR 56(g). A frivolous appeal is one where "there are no debatable issues upon which reasonable minds might differ and it is so totally devoid of merit that there is no reasonable possibility of reversal." *Carlile v. Harbour Homes, Inc.*, 147 Wn. App. 193, 217, 194 P.3d 280 (2008) (citing *State ex rel. Quick–Ruben v. Verharen*, 136 Wn.2d 888, 905, 969 P.2d 64 (1998)).

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Brown, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Kulik, J.

12